Viola **WILSON**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. No. 3–75–35.**

United States District Court,
E. D. Tennessee, N. D.

May 6, 1975.

J. Gregory O'Connor, Gilreath, Carpenter, Rowland, O'Connor & Pryor, Knoxville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action is presently before the Court on cross motions for summary judgment.

Plaintiff, a widow of a coal miner who died in the mines in 1949, seeks to review a final decision of the Secretary of Health, Education and Welfare denying her benefits under the Black Lung Act, as amended in 1972. 30 U.S.C. § 901 *et seq.* (Supp.1975). The Court's jurisdiction to review the Secretary's decision is invoked under 30 U.S.C. § 923(b) which incorporates by reference the judicial review provisions of 42 U.S.C. § 405(g).

### Administrative Proceedings

Plaintiff initially filed her application for benefits under the Act on April 30, 1973,[1] at which time she described her husband's disability as "smothering and coughing." (T–46) Following the denial of her application on September 19, 1973 by the Social Security Disability Insurance Division and an adverse reconsideration by that same division on January 29, 1974, an administrative hearing was held in Knoxville on June 18, 1974 when a Hearing Examiner considered plaintiff's claim *de novo.* Four months later, on September 12, 1974 the Hearing Examiner entered a formal decision denying plaintiff benefits under the Act. In this opinion, consisting of a discussion of the evidence considered and the applicable regulations, the following findings in part were made:

\* \* \* \* \*

"2. The miner, James Wilson, died on August 30, 1949, and according to the Certificate of Death, the cause of which was multiple skull fractures due to internal injuries as a result of a slate fall in the mines.

"3. The miner did not suffer from 'complicated' pneumoconiosis.

"4. The miner's death was not due to pneumoconiosis."

The Appeals Council affirmed the decision of the Hearing Examiner in December, 1974.

### Facts

Plaintiff and James Wilson were married in 1934 when plaintiff was sixteen. At that time Mr. Wilson was working at Peabody, Tennessee as a coal loader. (T–24) In total, Mr. Wilson spent twenty years in the mines performing a wide variety of jobs until his death due to a slate fall at the Jellico Mine in Anthras, Tennessee on August 30, 1949. (T–61) Mrs. Wilson at the administrative hearing testified that her husband's health began to deteriorate around 1942 or 1943 when she first noticed his coughing. (T–25) Due to his difficulty in breathing, Mr. Wilson was treated from 1942 until his death in 1949 by Drs. Rodriguez, Lynch, Seares, and Ausmus. The only available doctor at the time of plaintiff's hearing, however, was Dr. Lynch, then ninety-six years old.

In the first part of 1949 Mr. Wilson was hospitalized at Jellico Hospital for an unknown period of time "on account of his lungs and his cough." "They'd taken his tonsils out." (Plaintiff, T–31) Exhibit 80 indicates that the records of Jellico Hospital for the year 1949 have been destroyed and Exhibit 79 indicates that there are no available records concerning the treatment of Mr. Wilson by Dr. Ausmus, the physician who last treated him. Plaintiff's husband received a miner's pension for approximately six months in 1949 and returned to the mines in the early part of August 1949. Several weeks after his return he was killed in a mining accident. (T–29)

Mrs. Wilson testified that her husband was unable to sleep at night, tired easily and coughed up coal dust. She also stated that Dr. Ausmus told her that her husband suffered from "dust on the lungs," (T–32) and, in her opinion,

---

1. Section 924 of Title 30 provides that a widow must file her claim for benefits with-

in 6 months of her husband's death or before December 31, 1973, whichever is later.

her husband was disabled in the summer of 1949 even though he was killed on the job. Eight children, she testified, forced him back to work despite his illness.

Mrs. Mary B. Marlow, the wife of Mr. Marlow, a co-worker with Mr. Wilson, stated that she knew Mr. Wilson since 1934 as she was a neighbor of the Wilsons. She testified that the deceased miner had trouble "in breathing, and he had a[n] awful cough, and he was really disabled to work." (T–35) Mrs. Marlow added that "[w]ell, my belief would be that he had black lung. I believe that he had it. He didn't call it black lung, but I believe that's what it was because my husband had the same symptoms. . ." (T–37) By affidavit Mr. Marlow stated that Mr. Wilson had a breathing problem and that he was under a doctor's care. (T–83)

Mr. Harley Evans testified that he worked with Mr. Wilson and that the deceased worked in a variety of jobs, among them drilling, which, according to Mr. Evans, is a very dusty job. (T–39)

Because of the destruction of the records of the Jellico Clinic and Jellico Hospital for the time period in question, the only medical evidence is found in the statements of Drs. Prater (T–79) and Lynch. (T–78) Dr. Charles A. Prater in Exhibit 17 (T–79) makes the statement that, though the Jellico Clinic's records have been destroyed, he "remember[ed] treating . . . Mr. Wilson, at intervals, for an obstructive lung disease."

Exhibit 16 (T–78) contains the following statement of Dr. George Lynch:

"I knew James Wilson. He worked in the Anthres Coal Mines from 1936 to 1949. I was the Co. doctor all these years. I treated him for a cough and congestion of the lungs for about 3 years. I thought at the time he was suffering from coal dust in his lungs. I am now retired. I am 96 years of age."

Exhibit 11 (T–72), a letter from Margineal Lynch, daughter of Dr. Lynch, *supra*, dated October 5, 1973 substantially confirmed the statement of Dr. Lynch that Mr. Wilson suffered from lung trouble.

The miner's Certificate of Death (T–61) indicates that the cause of death was "(1) Multiple Skull Fractures and (2) Internal injures [sic]."

### Issue

The principal issue in this case is the role and procedural effect that "other relevant evidence" plays in an administrative determination of disability under the Black Lung Act.

### Law

To qualify for benefits under the provisions of 30 U.S.C. § 901 *et seq.* and the applicable regulations, 20 C.F.R. Part 410, a widow must demonstrate that she is (1) the widow of the deceased miner, 20 C.F.R. § 410.210(a); (2) that she has not remarried since the miner's death, 20 C.F.R. § 410.210(b); (3) that she has filed a timely and procedurally correct application, 20 C.F.R. § 410.213(c); and (4) that she was dependent on the miner at the time of his death, 20 C.F.R. § 410.213(d). Essentially self-evidencing requirements, there exists no dispute in this record that plaintiff satisfied these prerequisites. Additionally, however, and of considerable more difficulty, a widow must demonstrate that her husband:

"(1) Was entitled to benefits at the time of his death; [2] or

"(2) Died before January 1, 1974, and it is determined that he was totally disabled due to pneumoconiosis at the time of his death, or that his death was due to pneumoconiosis . . . " 20 C.F.R. § 410.210

Plaintiff claims that she satisfied both facets of the above twofold conjunctive test, that is, she proved that her husband suffered from pneumoconiosis (or

2. The Act was not in operation at the time of Mr. Wilson's death in 1949.

respirable disease) and that he was disabled within the meaning of the Act. The thrust of plaintiff's contention, and that argument that causes the most concern to the Court, is that upon introducing its evidence in this case, a prima facie case or presumption was created, which, when unrebutted by the Secretary, requires the plaintiff to prevail. As authority for this proposition plaintiff cites *Tibbs v. Weinberger,* 401 F. Supp. 1139 (E.D.Ky. Jan. 15, 1975).

Since adoption of plaintiff's position would necessarily have a formidable impact on the disposition of widows' black lung claims the Court has reviewed the Act and its available legislative history in its entirety together with the Secretary's regulations set forth in subpart D to Section 410 of Title 20, C.F.R. In the opinion of the Court this examination of congressional intent does not compel adoption of plaintiff's theory.

It is apparent, and plaintiff conceded that, as there existed no X-rays, pulmonary function studies, biopsies, autopsies or their medical equivalent to serve as a foundation for invoking either the permanent irrebutable presumptions of 20 C.F.R. § 410.418, patterned after the congressional presumptions of 30 U.S.C. § 921(c), or the interim rebuttable presumptions of 20 C.F.R. § 410.490, plaintiff had to resort to the "other relevant evidence" provisions of 20 C.F.R. §§ 410.414(c), 410.426(d), 410.454(c). As the legal effect of these sections is the central issue before the Court, their reproduction, in relevant part, is required:

"§ 410.414 *Determining the existence of pneumoconiosis, including statutory presumption.*

"(a) General. A finding of the existence of pneumoconiosis as defined in § 410.110(O)(1) may be made under the provisions of § 410.428 by:

"(1) Chest roentgenogram (X-ray); or

"(2) Biopsy; or

"(3) Autopsy.

"(b) Presumption relating to respiratory or pulmonary impairment. (1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section, if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment (see §§ 410.412, 410.422, and 410.426), it may be presumed, in the absence of evidence to the contrary (see subparagraph (2) of this paragraph), that a miner is totally disabled due to pneumoconiosis, or that a miner was totally disabled due to pneumoconiosis at the time of his death.

\*    \*    \*    \*    \*    \*

"(c) Other relevant evidence. Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term 'other relevant evidence' includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials. In any event, no claim for benefits under Part B of title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray)."

"§ 410.426 *Determining total disability. Age, education, and work experience criteria.*

\*    \*    \*    \*    \*    \*

"(d) Where a ventilatory study and/or a physical performance test is medically contraindicated, or cannot

be obtained, or where evidence obtained as a result of such tests does not establish that the miner is totally disabled, pneumoconiosis may nevertheless be found totally disabling if other relevant evidence (see § 410.-414(c)) establishes that the minor has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work."

"§ 410.454 *Determining the existence of pneumoconiosis, including statutory presumption—survivor's claim.*

"(a) Medical findings. A finding of the existence of pneumoconiosis as defined in § 410.110(O)(1) may be made under the provisions of § 410.428 by:

"(1) Chest roentgenogram; or

"(2) Biopsy; or

"(3) Autopsy.

"(b) Presumption relating to respiratory or pulmonary impairment—survivor's claim. (1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section, if other evidence demonstrates the existence of a chronic respiratory or pulmonary impairment from which the miner was totally disabled (see § 410.412) prior to his death, it will be presumed in the absence of evidence to the contrary (see subparagraph (a) of this paragraph) that the death of the miner was due to pneumoconiosis.

\* \* \* \* \* \*

"(c) Other relevant evidence. Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of death due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term 'other relevant evidence' includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials. In any event, no claim for benefits under Part B of title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray)."

The "other relevant evidence" provisions of the above regulations find their genesis in the Act's 1972 amendments which in particular part provide:

". . . In determining the validity of claims under this part, all relevant evidence, *shall be considered,* including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials." 30 U.S.C. § 923 (emphasis supplied)

Neither a reading of 20 C.F.R. §§ 410.414, 410.426, 410.454, nor an examination of 30 U.S.C. § 923 and its legislative history lends support to plaintiff's argument that, upon the introduction of her "other relevant evidence," the burden shifted to the Secretary. While it is apparent that the presumptions of 20 C.F.R. § 410.426 operate to shift the burden of going forward to the Secretary, the "other relevant evidence" provisions are not couched in similar language. More specifically Section

410.414 provides that "a finding . . . *may be made* if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment," (emphasis added); section 410.426 states that ". . . pneumoconiosis *may* nevertheless be found totally disabling if other relevant evidence (see § 410.414(c)) establishes that . . .;" (emphasis added) and, finally, section 410.426 reads that ". . . a finding of death due to pneumoconiosis *may be made* if other relevant evidence establishes that . . ." (emphasis added). An examination of the Act's legislative history indicates that the Secretary's use of the word "may" in the context of sections 410.414, 410.426, and 410.454 is to be given its traditional permissive or directory interpretation rather than a mandatory effect. *United States v. Cook*, 432 F.2d 1083, 1098 (7th Cir. 1970). Thus, in its traditional context, the word indicates that the Secretary may exercise his discretion in choosing between two alternatives. This same construction of "other relevant evidence" regulations was adopted by the district court in *Statzer v. Weinberger*, 383 F. Supp. 1258, 1262 (E.D.Ky.1974), where the Court stated:

"The Secretary concedes that the plaintiff, her daughter, and friends testified and submitted statements to the effect that the deceased miner coughed, spit-up blood and had breathing trouble. Although this evidence can properly be construed as other relevant evidence of a pulmonary impairment, (citation), the Court can find nothing in the statute or regulation that would indicate that such evidence is controlling. It is just one of several factors that must be weighed together with the medical evidence."

The Court is aware that an apparently contrary conclusion was later reached by the same Court in a setting somewhat similar but not identical to that before the Court here:

"As the plaintiff's late husband worked in the coal mines for a period in excess of fifteen years, she is entitled to prove the first element of her burden by introducing 'other relevant evidence', 20 C.F.R. 410.414(c), as to the existence of a totally disabling chronic respiratory or pulmonary condition. The term 'other relevant evidence includes: [quoting § 410.414(c)] . . .

"The widow's testimony at the hearing and a written statement submitted in addition to her testimony corroborates Dr. Bentley's reported findings as to the existence of a chronic respiratory disease. This evidence was not rebutted by the Secretary. Therefore, the Court must find the first portion of the plaintiff's burden to have been satisfied." *Tibbs v. Weinberger*, 401 F.Supp. 1139 (E.D.Ky. Jan. 15, 1975) (slip opinion at 2–3)

As noted above, the Court is not persuaded that the use of the phrase in 20 C.F.R. § 410.414(c) "a finding may be made" places a mandatory duty upon the Secretary to rebut a claimant's "other relevant evidence."

*Legislative History*

As originally enacted in 1969, the Black Lung Act did not specifically permit the consideration by the Secretary of "other relevant evidence." Concluding, however, that the number of denials of claims by the Secretary under the 1969 Act "suggest[ed] strongly that the solution ha[d] not been nearly as complete as Congress believed and expected it would be,"[3] Congress specifically allowed for consideration of such material in the 1972 Amendments. The Senate Report in emphasizing the role such evidence should play stated:

"It is important also that medical histories, evidence submitted by a

---

3. S.Rep. No. 92–743, 92nd Cong., 2d Sess., U.S.Code Cong. & Admin.News p. 2307.

miner's physician, affidavits, and other supporting evidence on the miner's physical condition as it relates to pneumoconiosis and its sequelae *be considered* by the Social Security Administration. There shall be deemed competent evidence in determining benefits, although lay evidence, other than a wife's, will be considered competent only in the case of a deceased miner." *Id.* at 2318 (emphasis added)

"Section 3(g) of the Committee bill provides, among other things, that all relevant medical tests *shall be considered* in determining the validity of claims for benefits. .. . ." *Id.* at 2319 (emphasis added)

"The Committee has been informed that it is the policy of the Social Security Administration to consider all relevant evidence submitted by the applicant and to secure such additional medical or other evidence as may be relevant to the adjudicating of claims. However, the Committee believes this is such an important consideration that, in light of past history, it must be reinforced by the weight of statutory authority. Thus the Committee has not only included the provision of the House bill that 'no claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram' but has added the following language: 'In determining the validity of claims under this part, all relevant evidence *shall be considered,* including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials.' This provision is applicable to both the determination of pneumoconiosis as well as

the determination of total disability." *Id.* at 2321 (emphasis added)

While mindful of the remedial intent of Congress, the Court cannot unreasonably strain the Act's interpretation to conclude that placing a statutory duty on the Secretary to "consider" such evidence as that submitted by plaintiff is equivalent to requiring him to rebut the same, *unless* the medical evidence is of the type and quantity sufficient to invoke the statutory or administrative presumptions. The difficulties in rebutting "other relevant evidence" where the miner died 26 years ago are manifest and such a formidable burden should not be lightly imposed even under the laudable desire of aiding a deserving claimant.

Under section 410.202 the widow must prove that her husband was totally disabled due to pneumoconiosis at the time of his death. The applicant assumes the burden of proving that her husband did in fact suffer from pneumoconiosis or its presumed equivalent and that such a condition totally disabled him as that term is defined under the Act. In the absence of qualifying clinical and laboratory evidence sufficient to invoke the established presumptions, not until this twofold burden is satisfied does the burden of going forward with contrary evidence shift to the Secretary. Here, there exists medical opinion based upon 25 years of recollection and unsupported by any clinical or laboratory findings that James Wilson was treated for an obstructive pulmonary disease. While viewed in a most charitable light such medical opinion may evidence that Mr. Wilson suffered from some form of respiratory restriction due to coal dust, it is not axiomatic that such a condition was totally disabling. This Doctors Ausmus and Prater do not say.

■ In summary, the Court is of the opinion that the statutory language and its legislative history, together with the Secretary's regulations, place a duty upon a Hearing Examiner to consider other relevant evidence such as that sub-

mitted by Mrs. Wilson in this case and that in his discretion the Hearing Examiner may predicate a finding of pneumoconiosis or disabling respiratory disease on the same but that the submission of other relevant evidence alone, falling below the standards sufficient to invoke a presumption, does not create a prima facie case, requiring the Secretary to go forward with disproving evidence.

### Total Disability

■ Assuming, *arguendo*, that her unrebutted "other relevant evidence" established the existence of pneumoconiosis or its presumed equivalent, plaintiff contends that Mr. Wilson was totally disabled from the same at the time of his death notwithstanding that plaintiff was working in the mines at the time of his death. Again, plaintiff cites the Court to *Tibbs, supra,* to support her position. There, the Court remanded the case to the Hearing Examiner to make a determination whether the deceased miner fell within an exception to the general rule that where a coal miner dies instantly in a coal mine accident while regularly and gainfully employed, the performance of such work forecloses any contention that the miner was totally disabled by pneumoconiosis or its presumed equivalent. This exception flows logically from the antithesis of "regular and gainful" employment, that is, such a contention of disability is not foreclosed where the miner because of his pneumoconiosis suffers from sporadic work, poor performance and marginal earnings. In contrast with the medical record in *Tibbs, supra,* however, there appears no medical opinion by either Drs. Lynch or Prater that the obstructive lung disease for which they treated James Wilson rendered him totally disabled or, more specifically, whether such respiratory condition was responsible for his period of unemployment in 1949. At the very most only lay evidence is found to support the proposition that James Wilson received a miner's pension for approximately six months because of his lung condition. In this posture, it is not necessary to determine whether James Wilson's return to work in August 1949 and his working in the mine for approximately three weeks thereafter was sufficient to be considered regular and gainful work under the Act.

The Court's review of the record indicates in this instance that the Hearing Examiner's decision that plaintiff failed to carry her burden of proof is supported by substantial evidence.

Accordingly, plaintiff's motion for summary judgment is denied and this action is dismissed.