**Kell BERNARDI, Plaintiff,**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

Civ. No. 74–417.

United States District Court,
E. D. Oklahoma,
Civil Division.

Nov. 12, 1975.

Clyde Stipe, McAlester, Okl., for plaintiff.

Edwin Gage, Asst. U. S. Atty., Muskogee, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

In this action Plaintiff seeks judicial review of Defendant's final administrative decision that Plaintiff is not entitled to "Black Lung" benefits under Title IV–B of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. §§ 921 et seq. Jurisdiction is founded upon 42 U.S.C. § 405(g), which is incorporated into 30 U.S.C. § 923(b) by reference.

Plaintiff filed his application for benefits on April 21, 1970 (Tr. 45–48). The application was denied initially by the Bureau of Disability Insurance on December 31, 1970 (Tr. 49–50). The application was automatically reviewed under the 1972 amendments to the Act and again denied (Tr. 51–53). Plaintiff then requested a hearing (Tr. 20) which was granted and conducted on August 14, 1974 (Tr. 21–44). The Administrative Law Judge who heard Plaintiff considered his case de novo and concluded he was not entitled to benefits under the Act. (Tr. 12–17). Plaintiff then requested administrative review of the Administrative Law Judge's decision (Tr. 10). Additional evidence was considered by the Appeals Council on review (Tr. 5–9, 107–108). See 20 C.F.R. § 410.464. Notwithstanding said additional evidence the Appeals Council determined the Administrative Law Judge had reached the correct decision (Tr. 4). Plaintiff then filed this action.

The purpose of Title IV is, in part, to provide benefits to coal miners who are totally disabled due to pneumoconiosis, 30 U.S.C. § 901. The Secretary of Health, Education and Welfare is charged with the responsibility of administering the Act with respect to claims filed by miners on or before December 31, 1973. 30 U.S.C. § 924. The Secretary is also charged with the responsibility of promulgating regulations for the determination of whether a miner is totally disabled due to pneumoconiosis. 30 U.S.C. § 921. There are certain statutory presumptions relating to the determination of pneumoconiosis established by the Act. 30 U.S.C. § 921. These presumptions are repeated in the Secretary's regulations. 20 C.F.R. §§ 410.401 et seq.

■ Judicial review of administrative decisions relating to applications made under Title IV is conducted pursuant to 42 U.S.C. § 405(g). 30 U.S.C. § 923. Under 42 U.S.C. § 405(g) the Secretary's decision must be affirmed if supported by substantial evidence. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

■ In conducting this review this Court is required to examine the facts contained in the administrative record, evaluate the conflicts, and make a determination whether the facts support the several elements which make up the ultimate administrative decision. *Nickol v. United States,* 501 F.2d 1389 (Tenth Cir. 1974); *Heber Valley Milk Company v. Butz,* 503 F.2d 96 (Tenth Cir. 1974). The burden is on the Plaintiff to establish entitlement to benefits under the Act. 20 C.F.R. § 410.410. See also *Kutchman v. Cohen,* 425 F.2d 20 (Seventh Cir. 1970). Judicial review is limited to an inquiry as to whether there is substantial evidence contained in the record as a whole to support the final decision of the Secretary. *Hedge v. Richardson,* 458 F.2d 1065 (Tenth Cir. 1972).

The ultimate administrative decision herein is evidenced by the Hearing Decision of the Administrative Law Judge who heard Plaintiff's case. He found Plaintiff to have at least 10 years of underground coal mining experience; but that the evidence did not establish that Plaintiff had pneumoconiosis or a totally disabling chronic respiratory or pulmonary disease presumed to be pneumoconiosis; Plaintiff's pulmonary function values do not exceed the interim standards or demonstrate significantly impaired lung function; and that there was no evidence of a medically demonstrable severe lung impairment (Tr. 18).

Plaintiff has submitted a brief arguing his side of the case and Defendant has responded thereto. The focus of contention in the case is the above mentioned additional medical evidence admitted into evidence by the Appeals Council. There is little question but that without this evidence Plaintiff has not shown himself to be entitled to benefits. However, when the additional evidence is considered Plaintiff makes a much stronger case. Plaintiff argues that the evidence as a whole, including said additional evidence, establishes his entitlement to benefits. Defendant tends to agree that if the additional evidence is considered Plaintiff may have established the existence of pneumoconiosis, but argues that if Plaintiff has established the existence of the disease, he has only done so as of a date after Defendant's responsibility for the administration of the Act had terminated. Medical evidence is the primary factor to be considered in determining whether a claimant has established entitlement to benefits under the Act. However, vocational data may in some cases be relevant. See 20 C.F.R. §§ 410.401–410.410.

The earliest medical evidence contained in the record is a report by L. M. Milton, M.D., dated September 4, 1970 (Tr. 64–67). In this report Dr. Milton states that Plaintiff had good respiratory excursion, breath sounds of good quality, percussion note normal, no rales, ronchi or expiratory wheezes, x-ray exam revealed minimal fine nodular infiltration-fibrosis in both lower lung fields ranging up to 1mm in size. Pulmonary function study showed total vital capacity to be 2.8 liters; one second vital capacity 2.5 liters, maximum breathing capacity was 84 liters per minute. Impression was possible pneumoconiosis not definitely diagnosed. The next medical evidence is a roentgenographic interpretation, apparently of the x-ray film taken during Dr. Milton's examination. This interpretation is completely negative (Tr. 69–70). A second roentgenographic interpretation, apparently the same x-ray file, made by a Dr. Halpern, is also completely negative (Tr. 71–72). The next medical evidence is a report by H. C. Wheeler, M.D., dated August 3, 1974, stating that Plaintiff had high blood pressure (Tr. 82). The next medical evidence is a report by W. Turner Bynum, M. D., dated August 12, 1974 (Tr. 85–87). Dr. Bynum reports that Plaintiff had dyspnea on exertion and a productive cough. Plaintiff's physical examination showed the lungs to be negative to percussion except for the fact that Plaintiff refused to take a deep breath. X-rays were normal except for Plaintiff's failure to take a deep breath. Pulmonary function studies were unsatisfactory due to Plaintiff's lack of cooperation. Dr. Bynum believed Plaintiff to have normal ventilatory capacity. No pulmonary disease was diagnosed.

The final medical evidence is a report by Frank Bradley, M.D. dated November 13, 1974 (Tr. 107–108). This is the report that was admitted into evidence by the Appeals Council. Physical examination showed the chest to be emphysematous with marked dullness to percussion in the lower half bilaterally with hyper-resonance in the upper half. Expansion was limited. On auscultation crepitant and moist rales were heard. Attempts to produce a spirographic tracing failed as Plaintiff did not have enough air. MVV observed was 0 liters per minute. However, blood gas analysis produced a normal figure. X-ray examination showed some destruction of alveoli, there was thickening of the bronchi and the beginning of an area of interstitial fibrosis. Large nodular fibrotic deposits were ob-

served in the region of the helium. Emphysema was also observed. Coal miners pneumoconiosis was diagnosed.

Under the Secretary's regulations, in order to establish entitlement to benefits, a claimant must show that he is a miner; that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the Nation's coal mines. 20 C.F.R. § 410.410(b). In this case the Secretary found that Plaintiff had failed to establish the existence of pneumoconiosis. The basic regulations for determining the existence of pneumoconiosis are found in 20 C.F.R. § 410.414 and 20 C.F.R. § 410(c). Under 20 C.F.R. § 410.414(a) a determination of the existence of pneumoconiosis can be made under the provisions of 20 C.F.R. § 410.428 by means of x-ray, biopsy, or autopsy. Under 20 C.F.R. § 410.428(b) if other relevant evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment, it may be presumed, in the absence of evidence to the contrary, that a miner is totally disabled due to pneumoconiosis. This presumption applies alternatively to miners with either 15 or many years of underground coal mine employment. 20 C.F.R. § 410.414(b)(2) & (3). Under 20 C.F.R. § 410.414(c) a finding of pneumoconiosis may be made on the basis of other relevant evidence establishing the existence of a totally disabling chronic respiratory or pulmonary impairment and that such impairment arose out of employment in a coal mine. Alternatively Plaintiff is entitled to establish total disability due to pneumoconiosis under the interim adjudicatory rules set out in 20 C.F.R. § 410.490.

In considering the evidence to the exclusion of the additional evidence admitted by the Appeals Council, it appears that the only comprehensive report is that of Dr. Milton. The report of Dr. Bynum is of little probative value due to Plaintiff's lack of cooperation. In Dr. Milton's examination Plaintiff's x-ray showed fine nodular fibrosis in both lung fields ranging up to 1mm in size. Under the first alternative of the interim standards an x-ray can be used to establish the existence of pneumoconiosis under the criteria of 20 C.F.R. § 410.428. Dr. Milton apparently classified Plaintiff's x-ray as 1,p. This is not a classification listed as qualifying under 20 C.F.R. § 410.428(a)–(1). The other standards of 20 C.F.R. § 410.428 do not apply herein as there is no evidence of a biopsy having been performed. The second interim alternative allows a claimant with 10 years of underground coal mining experience to establish pneumoconiosis through a ventilatory study. 20 C.F.R. § 410.490(b)–(ii). If a miner meets the values stated in this table he will be presumed to have pneumoconiosis if he establishes that his impairment arose out of coal mine employment. Under 20 C.F.R. § 410.416 if a miner with ten years of underground coal mining experience shows that he has pneumoconiosis, it will be presumed to have arisen out of coal mine employment. Thus the Secretary could have omitted the last qualification which only serves to further confuse unduly complex regulations. Dr. Milton found Plaintiff's $FEV_1$ (1 second forced expiratory volume) $= 2.5$ liters and his MVV, (maximum voluntary ventilation, or maximum breathing capacity) $= 84$ liters per minute. Plaintiff is 65½ or 66 inches tall (Tr. 64, 86). The proscribed values for a man Plaintiff's height are $FEV_1$ less than or equal to 2.3 liters and MVV less than or equal to 92 liters per minute. Thus, at the time of Dr. Milton's study Plaintiff's $MVV_1$ met the proscribed requirements but his $FEV_1$ exceeded the allowable limits. Therefore, Plaintiff failed to qualify under the interim standards.

Turning next to the permanent criteria, as has been previously stated, the basic provisions on determining the existence of pneumoconiosis are set out in 20 C.R.F. § 410.414, 20 C.F.R. § 410.410(c). There are three alternatives under 20 C.F.R. § 410.414. The first alternative is a finding of the existence of pneumoconiosis under the provisions of 20 C.F.R. § 410.428 by means of chest x-ray, biopsy, or autopsy. This is the same as the first alternative under the interim standards which has already been

considered and rejected. The second alternative under 20 C.F.R. § 410.414 is other evidence demonstrating the existence of a totally disabling chronic pulmonary or respiratory impairment. 20 C.F.R. § 410.-414(b) references 20 C.F.R. § 410.412, 20 C.F.R. § 410.422, and 20 C.F.R. § 410.426. 20 C.F.R. § 410.412 deals only with total disability and not with a determination of the existence of pneumoconiosis. 20 C.F.R. § 410.422 also deals only with the question of total disability and not with the question of the existence of pneumoconiosis. 20 C.F.R. § 410.426(b) does, however, appear to be relevant to a determination of the existence of pneumoconiosis. It sets out a table of values for the determination of total disability due to pneumoconiosis on the basis of a ventilatory study.[1] In order to qualify under this table, Plaintiff's MVV would have to be less than or equal to 62 liters per minute, his $FEV_1$ less than or equal to 1.7 liters. As Plaintiff's MVV = 84 liters per minute and $FEV_1$ = 2.5 liters he clearly failed to qualify under these values. The third alternative for establishing the existence of pneumoconiosis as established by 20 C.F.R. § 410.414(c) is other relevant evidence establishing the existence of totally disabling chronic respiratory or pulmonary impairment and that such impairment arose out of employment in a coal mine.[2] In considering the medical evidence contained in this record the strongest evidence of pneumoconiosis, other than ventilatory studies, appears to be Dr. Milton's diagnosis by x-ray of fine-nodular infiltration-fibrosis. Pneumoconiosis is defined to include progressive massive fibrosis and massive pulmonary fibrosis by 20 C.F.R. § 410.401(b)–(1). This diagnosis would not therefore establish the existence of pneumoconiosis within the meaning of the Act. Moreover, Dr. Milton's diagnosis would seem to have been refuted by subsequent readings of the same film by other doctors.

Thus, it is clear that, disregarding the additional evidence, a reasonable mind might conclude that Plaintiff had failed to establish the existence of pneumoconiosis.

Before considering the additional evidence admitted by the Appeals Council, the Defendant's argument with respect to the effect of this testimony should be considered. With respect to Dr. Bradley's report, Defendant states that the report "read in a light most favorable to plaintiff shows unrebutted evidence of pneumoconiosis." However, Defendant argues that Dr. Bradley's report was based on tests performed in October, 1974, some 15 months after Defendant's responsibility for the administration of the Act had passed. Defendant's argument is well taken. 30 U.S.C. § 901 provides in part that it is the purpose of Title IV to provide benefits, in conjunction with the states, to coal miners who are totally disabled due to pneumoconiosis. The Secretary of Health, Education and Welfare is charged with the responsibility of administering Part B of Title IV, 30 U.S.C. §§ 921 et seq. 30 U.S.C. § 921(b); 30 U.S.C. § 902(c). The Secretary is to make payments of benefits to any miner who is totally disabled due to pneumoconiosis who establishes entitlement thereto under the provisions of Title IV and the Secretary's regulations promulgated thereunder. 30 U.S.C. § 921(a). No claim for benefits under Part B is to be considered by the Secretary unless it is filed on or before December 31, 1973. 30 U.S.C. § 924. In carrying out the provisions of Part B of Title IV the Secretary is to use the procedures and personnel he uses in determining entitlement to disability insurance benefits under 42 U.S.C. § 423. 30 U.S.C. § 923(b). 42 U.S.C. § 423(b) reads in part:

"An application for disability insurance benefits filed before the first month in which the applicant satisfies the require-

---

1. If a miner qualifies under these values, his ventilatory study would both establish the existence of pneumoconiosis under 20 C.F.R. § 410.414(b) and its disabling effect.

2. The basic difference between 20 C.F.R. § 410.414(b) & (c) would appear to be that

under the former section a rebuttable presumption exists in the case of a miner who has a long term of coal mine experience and no such presumption exists in the latter section.

ments for such benefits (as prescribed in subsection (a)(1) of this section) shall be deemed a valid application only if the applicant satisfies the requirements for such benefits before the Secretary makes a final decision on the application. If, upon final decision by the Secretary, or decision upon judicial review thereof, such applicant is found to satisfy such requirements, the application shall be deemed to have been filed in such first month."

The same rule is contained in the Secretary's regulations.

"Prospective life of claims. A claim which is filed before the claimant meets all the requirements for entitlement to such benefits will be deemed a valid claim if the claimant meets such requirements of entitlement (1) before the Administration makes a final decision on such claim or (2) if the claimant has timely requested judicial review of such final decision before such review is completed. If the claimant first meets the requirements for entitlement to benefits in a month after the month of actual filing but before a final administrative or judicial decision is rendered on his claim, his claim will be deemed to have been effectively filed in such first month of entitlement."

Dr. Bradley's report is the final medical evidence contained in the record. It is dated November 13, 1974 and apparently reflects the results of an examination performed on October 4, 1974 (Tr. 6). Thus, the first possible showing of entitlement to benefits by Plaintiff is some months after the Secretary's responsibility for the administration of the Act had passed. Under the above quoted statute and regulation Plaintiff's application was not filed until he had satisfied the requirements of entitlement to benefits. Thus, Plaintiff is out of time with regard to Part B of Title IV and if he must seek relief under Part C there is an important distinction between the two parts of the program. Part B is administered by the Secretary of Health, Education and Welfare. Benefits payable thereunder are obviously paid out of Federal funds. Under Part C claims are filed under state work-

men's compensation laws where adequate, and where inadequate the Secretary of Labor is charged with the administration of the program. See 30 U.S.C. §§ 931 and 932. In either case the financial burden of administering the program is not on the Federal government but on the operators of coal mines. There is a clear Congressional intent manifested in the Act that the Government's responsibility for the program be terminated at a certain date. See 1972 U.S.Code Cong. & Admin.News, p. 2305. It is consistent with this intent that claimants who have not established entitlement to benefits before the cut off date be required to apply under Part C. Accordingly, Dr. Bradley's report does not change the result which is reached above in considering the medical evidence to the exclusion of his report. If Plaintiff has established the existence of pneumoconiosis he has done so only after Defendant's responsibility for the administration of the Act has terminated. Therefore the Defendant's administrative decision should be affirmed. A judgment based on the foregoing will be entered this date.