Joseph F. MARKOSKY

v.

David MATHEWS, as Secretary of Health, Education, and Welfare.

Civ. A. No. 75–112.

United States District Court,
E. D. Pennsylvania.

Aug. 24, 1977.

Anthony J. Miernicki, Shenandoah, Pa., for plaintiff.

Mitchell R. Hankin, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

In this black lung case, on January 12, 1976, I approved the first Report and Recommendation of the United States Magistrate and ordered that the action be remanded to the Secretary for further findings. After making the requested additional findings, the Secretary denied plaintiff black lung benefits under Part B, Subchapter IV, of the Federal Coal Mine Health and Safety Act of 1969 (the Act) as amended in 1972, 30 U.S.C. §§ 901–41 (Supp. V 1975).

■ Before me now for consideration is the second Report and Recommendation[1] of the Magistrate recommending that the Secretary's motion for summary judgment be denied and recommending that summary judgment be granted in favor of the plaintiff, declaring his entitlement to benefits. Contrary to the Magistrate's recommendation, I conclude that the Secretary's findings and conclusions are supported by substantial evidence and applicable legal principles, and therefore may not be disturbed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Litwak v. Secretary of Health, Education & Welfare*, 430 F.Supp. 586 (E.D.Pa.1977).

## FACTS

Plaintiff filed his application for benefits under the Act in 1970 and again in 1972. His claim was first denied in February 1971 and again on reconsideration on July 19, 1973 by the Bureau of Disability Insurance of the Social Security Administration. In September 1973 plaintiff requested, and was granted, a hearing before an Administrative Law Judge (ALJ). The hearing was held in August 1974, at which time plaintiff was represented by an attorney and the case was considered *de novo.*

Plaintiff Markosky testified at the hearing that he was 50 years old. He was employed as a laborer in the coal mines for a three-year period from 1950 to 1953. Prior to that time, from 1939 to 1950, and subsequent to that time, from 1954 to 1963, he was self-employed as a mine operator. His mining work involved digging, shoring, and timbering. From 1964 to 1968 plaintiff worked as a laborer in construction work. Plaintiff testified that he was unable to do construction work after 1968 because of the dust and he "don't got the wind."

As to plaintiff's recent physical condition, he testified that he has coughing spells in the mornings and that he expectorates a whitish phlegm. He gets pains across his chest, but he has never been hospitalized for his afflictions, and has no heart disease or hypertension. Plaintiff smoked regular-

ly until 1973 when his family doctor told him to stop smoking. He restricts his living quarters to the first floor of his home, and never ventures up the stairs to the second floor.

At the hearing before the ALJ, plaintiff submitted reports from two doctors and a series of x-rays. The medical evidence indicated that he was afflicted to some degree with pneumoconiosis. When the x-rays submitted by plaintiff were re-read by three other physicians at the request of the Secretary, however, each of the three doctors found them negative for pneumoconiosis. The ALJ concluded that while there was evidence that the plaintiff has a chronic respiratory pulmonary impairment, "[t]he preponderance of medical and other evidence does not demonstrate the presence of totally disabling pneumoconiosis." The ALJ, therefore, denied plaintiff benefits under the Act.

■ The plaintiff appealed the Secretary's decision by filing suit in district court pursuant to 30 U.S.C. § 923(b) (Supp. V 1975). On cross motions for summary judgment, the Magistrate concluded that the Secretary's finding that plaintiff does not have "totally disabling pneumoconiosis" was ambiguous and unspecific. The finding could be interpreted, the Magistrate concluded, to mean that plaintiff has some degree of pneumoconiosis. The Magistrate further concluded that no finding had been made as to whether the plaintiff has a degree of respiratory impairment such that he can no longer engage in "comparable gainful employment," given that he can no longer work in the mines. If the plaintiff's respiratory function is impaired to a degree that he cannot work in the mines and cannot engage in comparable gainful work, and if any form of pneumoconiosis resulting from employment in the mines is the primary reason for his inability to engage in work, the plaintiff would be entitled to disability benefits. Thus, my order approving the Magistrate's Report and Recommendation denied the motions for summary

1. The Report and Recommendation is appended hereto as Appendix A.

judgment and remanded the action to the Secretary for further findings as to whether (1) the plaintiff is unable to engage in "comparable gainful work" (2) as a result of some form of pneumoconiosis arising from his employment in the mines.

Following the hearing on remand, the ALJ made these additional findings of fact:

"3. The claimant has three years of coal mine employment in the Nation's coal mines, and nineteen years of self-employment in the coal mines. (Exhibit 2 and testimony of claimant).

4. That the preponderance of the medical and vocational evidence of record establishes the presence of a respirable disease of sufficient severity to preclude the claimant from engaging in mining or other comparable, gainful employment. (Testimony of Dr. Blum, Dr. Mika and Dr. Szuhay).

5. That the claimant has submitted no evidence to establish that his disabling condition arose out of his three years of covered coal mine employment under the Act, as opposed to 19 years of self-employment.

6. The medical evidence of record indicates that the claimant's pulmonary impairment did not arise out of his three years of covered coal mine employment. (Testimony of Dr. Blum and Dr. Mika).

7. The claimant's disabling impairment arose out of his entire 22 years of exposure to the silica hazard as a self-employed miner and a mine employee. (Testimony of Dr. Mika and Dr. Blum)."

Based on the additional findings of fact, the ALJ reached the following conclusion of law:

"Since the claimant in this matter offered no evidence to indicate that his disabling impairment arose out of his three year employment in the Nation's coal mines, rather than 19 years of self-employment, and there is medical evidence to indicate that his disabling condition arose out of his entire 22 year exposure as a self-employed miner and coal mine employee in the record; he does not meet the tests set forth in 20 CFR 410.410(b) and 20 CFR 410.414(b) and therefore is not entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended."

For plaintiff to be entitled to benefits, it is necessary that the impairment "arose out of" the three years plaintiff worked as an employee. 20 C.F.R. § 410.410(b)(1) (1977); see infra. The ALJ concluded that plaintiff had not submitted evidence to establish that his respiratory impairment arose out of his three years of coal mine employment, rather than out of his nineteen years of self-employment. This decision was approved by the Appeals Council of the Social Security Administration on February 7, 1977, and thus became the final decision of the Secretary. The plaintiff has again appealed the ALJ's decision by filing suit in district court, and the Secretary has again filed a motion for summary judgment. The Magistrate recommends that I deny the Secretary's motion for summary judgment and instead enter summary judgment in favor of the plaintiff, thereby declaring his entitlement to benefits.

The Magistrate reasons that plaintiff could not possibly establish that the disabling condition arose out of the three years of employment rather than out of the nineteen years of self-employment, that the plaintiff did establish that his three years of employment "cooperated and combined" with the other years of activity to cause his disabling condition, and that "where several causes stand on the same level as being substantial factors in causing the plaintiff's disability, each will be considered a concurrent proximate cause of the plaintiff's condition." Report and Recommendation at 5–6. The Magistrate concludes that the plaintiff is therefore entitled to benefits under the Act, and that the Secretary's decision should be reversed.

## DISCUSSION

The Federal Coal Mine Health and Safety Act provides that coal miners "who are totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's coal mines" shall be entitled to

black lung benefits. 30 U.S.C. § 901 (Supp. V 1975). To establish entitlement to benefits, a claimant must prove the following elements: (1) that he is or was a coal miner; (2) that he is totally disabled due to pneumoconiosis; and (3) that his pneumoconiosis "arose out of" coal mine employment. 20 C.F.R. § 410.410(b) (1977). The regulations promulgated by the Secretary exclude self-employment from the Act's coverage:

" 'Miner' or 'coal miner' means any individual who is working or has worked *as an employee* in a coal mine, performing functions in extracting the coal or preparing the coal so extracted." (emphasis supplied) 20 C.F.R. § 410.110(j) (1977).

20 C.F.R. § 410.110(m) provides in part:

" 'Employee' means an individual in a legal relationship (between the person for whom he performs services and himself) of employer and employee under the usual common law rules.

(1) . . . . In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common-law rules . . .."

Claimants for black lung benefits may establish the necessary causal relation between past coal mine employment and an existing lung condition under one of the two subsections 20 C.F.R. § 410.416, which provides:

"(a) If a miner was employed for 10 or more years in the Nation's coal mines, and is suffering or suffered from pneumoconiosis, it will be presumed, in the absence of persuasive evidence to the contrary, that the pneumoconiosis arose out of such employment.

(b) In any other case, a miner who is suffering or suffered from pneumoconiosis, must submit the evidence necessary to establish that the pneumoconiosis arose out of employment in the Nation's coal mines."

An underlying issue in this case is the precise nature of the causal relationship that must be established by a claimant who relies on subsection (b).

■ In reviewing interpretations by the Secretary of the Act and the regulations enacted pursuant thereto, the district court has the full power of an appellate court to apply its own interpretation of the law. In reviewing the factual findings of the Secretary, however, the power of the district court is severely circumscribed. Section 413(b) of the Act, 30 U.S.C. § 923(b), incorporates section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which provides in pertinent part:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .."

The question before me is limited, therefore, to whether there is substantial evidence upon the record as a whole to support the findings of the Secretary that the plaintiff does not meet the tests set forth in 20 C.F.R. § 410.410(b) and 20 C.F.R. § 410.-414(b). That is, the Secretary's decision may not be disturbed if there was substantial evidence upon the record that the plaintiff does not have pneumoconiosis which "arose out of employment in the Nation's coal mines."

■ "Substantial evidence" may be defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). It is "more than a mere scintilla" of evidence, but it may be "somewhat less than a preponderance" of the evidence. *Ginzburg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir. 1971), quoting *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966).

The ALJ's conclusion that plaintiff is not entitled to benefits was explicitly based on the absence of any evidence that plaintiff's condition "arose out of his three year employment in the Nation's coal mines, *rather*

*than* 19 years of self-employment" (emphasis supplied). In the Magistrate's view, the italicized language shows that the ALJ conditioned plaintiff's eligibility for benefits on his ability to prove that the three years of covered employment was *the sole* cause of his condition, an approach the Magistrate declines to follow. Pointing out that all the evidence suggests that the pneumoconiosis arose gradually over a period that includes both covered and uncovered employment, and that it could not be shown "that any one year or years caused the disabling condition," the Magistrate contends that a claimant should not be required to prove that his covered employment alone, and not his uncovered employment, gave rise to the disability. Instead, it should suffice for a claimant to show that the period of covered employment "cooperated and combined with" the period of uncovered employment to cause, and thus was a substantial factor in causing, the disabling condition. Thus, based on the ALJ's finding that plaintiff's disease arose out of the *entire* twenty-two years of exposure, the Magistrate concluded that the three years of covered employment was a concurrent proximate cause of plaintiff's condition, and that plaintiff is therefore entitled to benefits for pneumoconiosis that "arose out of employment in the Nation's coal mines." 20 C.F.R. § 410.416(b).

▮ Despite the natural sympathies for plaintiff's predicament, I cannot accept the Magistrate's analysis for several reasons. First, the proposed "substantial factor" test does not fit easily within the statutory framework. Congress foresaw that in some cases the causal relationship between cover-

ed employment and disease would be difficult to prove, and it dealt with this problem in section 411(c)(1) of the Act, now codified at 30 U.S.C. § 921(c)(1) (Supp. V 1975) (as amended). This provision, which is restated in subsection (a) of the regulation set out *supra,* establishes a rebuttable presumption that the disabling condition of a claimant with *ten years or more* of covered employment "arose out of" that employment. If, as the Magistrate suggests, Congress intended that the claimant's burden of proof (as to causation) could be carried simply by showing that covered employment was a "substantial factor," there would appear to be no reason for the ten-year presumption. A claimant with ten years or more of covered employment clearly would be in a *better* position to prove that his covered employment was a "substantial factor" than a claimant with only two or three years of covered employment. Under the standard proposed by the Magistrate, one could only conclude that Congress provided the ten-year presumption to lend further assistance to those claimants who were already in the best position to carry their burden of proof. I am unwilling to accept what appears to me to be an inconsistent reading of related statutory provisions.[2]

The approach recommended by the Magistrate would entail a comparable disruption of the existing statutory framework in a case where the claimant does *not* have ten years of covered employment. Under subsection (b) of the regulation set out *supra,* such a claimant "must submit the evidence necessary to establish that the pneumoconiosis arose out of [covered] employment."

---

**2.** One provision, added to the Act in 1972, offers some indirect support for reducing a claimant's burden of proof on the causation issue. Section 4(c) of the Black Lung Benefits Act of 1972, 30 U.S.C. § 921(c)(4) (Supp. V 1975), provides that a miner with fifteen years of covered employment who suffers a totally disabling respiratory impairment shall be presumed to be disabled due to pneumoconiosis. The section also states, in the language relevant here, that the Secretary may rebut this presumption by establishing, *inter alia,* that the respiratory impairment "did not arise out of, *or in connection with,* employment in a coal mine" (emphasis supplied). It may be that

since Congress viewed "out of" .and "in connection with" as equivalent in the context of rebutting this fifteen-year presumption, Congress also viewed them as equivalent in the context of a claimant's initial burden of proof on the causation issue, but chose to use only the former term in the statute. If this were the case—and we simply have no way of knowing whether or not it is—then a claimant could properly be required to establish only that his disability arose "in connection with" covered employment in order to carry his burden on the causation issue. I need not consider whether this standard is the same as the Magistrate's proposed "substantial factor" test.

20 C.F.R. § 410.416(b). Under the standard proposed by the Magistrate, however, if such a claimant can show that the disease was contracted gradually during his entire career in the mines, he is entitled to benefits unless the Secretary can show that the covered employment was *not* a substantial factor in causing the disability. Report and Recommendation at 5–6. This would effectively shift the burden of proof to the Secretary in such a case, and significantly undercut the quoted regulation. Because the "substantial factor" analysis outlined in the Magistrate's report distorts the congressional intent underlying the ten-year presumption and disrupts the arrangement contemplated by subsection (b) of the quoted regulation, I am constrained to reject that analysis.

I am also in disagreement with the Magistrate's reading of the ALJ's findings of fact and conclusions of law. In denying plaintiff's claim, the ALJ relied on the absence of evidence to establish that the disability arose from the three years of covered employment "rather than" the nineteen years of uncovered employment. As I noted earlier, the Magistrate takes this to mean that the ALJ applied a very restrictive standard on the issue of causation. Since the ALJ did not address the issue, I cannot be certain what standard he actually applied. It might in fact have been a "sole cause" standard, as the Magistrate believes, but it also might have been a "predominant cause" standard, or arguably even the "substantial factor" standard that the Magistrate would apply.

My role at this juncture is limited to deciding whether the findings of fact made by the ALJ (and adopted by the Secretary) are supported by substantial evidence. A thorough examination of the record in this case has convinced me that, regardless of which legal standard was applied on the causation issue, the Secretary's findings must be sustained. The reason for this is straightforward. If the ALJ applied the broadest test, the "substantial factor" test, and his conclusion that plaintiff failed to carry that burden is supported by substantial evidence on the record, it follows that

his conclusion would also have been sustained had the ALJ applied a narrower test, such as the "predominant cause" test or the "sole cause" test. Under either of the latter tests, the claimant's burden is considerably heavier, and consequently a finding that the burden was not carried is more easily supportable.

■ Proceeding, then, on the assumption that the Secretary's finding is based on the "substantial factor" test, I conclude that that finding may not be disturbed. Plaintiff had the burden of proving that he is entitled to benefits. *E. g., Seacrist v. Weinberger,* 538 F.2d 1054, 1057 (4th Cir. 1976); *Bernardi v. Weinberger,* 412 F.Supp. 629, 631 (E.D.Okla.1975); *Wilson v. Weinberger,* 401 F.Supp. 276, 282 (E.D.Tenn. 1975). The medical testimony before the ALJ at the hearing on remand was consistent that the plaintiff had most likely contracted pneumoconiosis gradually over the entire twenty-two years of work in the mines. *See* Report and Recommendation at 4–5. The Secretary could conclude from this that plaintiff had failed to establish that the three-year period of covered employment, falling in the middle of his twenty-two years of mine work, was a "substantial factor" in causing his disability. Substantial evidence to support a finding of fact may take the form of circumstantial evidence or indirect proof. *Carter-Wallace, Inc. v. Gardner,* 417 F.2d 1086, 1093 (4th Cir. 1969), *cert. denied,* 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271 (1970).

■ A different result is not required simply because the evidence offers some support for a finding inconsistent with the one actually made. The Secretary might have found that the three-year period *was* a "substantial factor," largely on the strength of the following testimony by Dr. Blum:

"Q. In your opinion the three years that he worked contributes to the entire picture of development of silicosis in his lungs?

A. Yes."

Transcript of Remand Hearing at 14.

It is settled law, however, that the possibility of drawing inconsistent conclusions from a factual record does not prevent the conclusion actually drawn by the trier of fact from being supported by substantial evidence. *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Widing Transp., Inc. v. ICC,* 545 F.2d 652, 658–59 (9th Cir. 1976); cf. *E. W. Coslett & Sons, Inc. v. Bowman,* 354 F.Supp. 330, 332 (E.D.Pa.), *aff'd mem.,* 487 F.2d 1394 (3d Cir. 1973).

As I stated earlier, since the Secretary's findings would be sustained even if based on the "substantial factor" test, it follows that they would be sustained if based on any higher standard as to the claimant's burden of proof. Therefore, although some doubt exists as to the precise standard applied by the ALJ (and the Secretary), the Secretary's findings are plainly supported by substantial evidence and may not be disturbed. Neither party has suggested that the ALJ used the wrong legal standard in assessing the evidence, and the record contains no basis for such a suggestion.

The Report and Recommendation of the Magistrate will not be approved, and the Secretary's motion for summary judgment will be granted.

## APPENDIX A

### REPORT—RECOMMENDATION

RICHARD A. POWERS, III
UNITED STATES MAGISTRATE

This is the second time this case has been submitted for review of the decision of the Secretary of Health, Education and Welfare (Secretary) which denied the plaintiff black lung benefits under the Act. 30 U.S.C.A. § 922(a)(1) as amended and § 923. This matter was previously remanded to the Secretary on January 12, 1976 to hold another hearing and determine the extent of the plaintiff's respiratory impairment and then make a determination whether he is eligible for benefits under the Act.[1] Following the second hearing, the Administrative Law Judge (ALJ) made the following significant findings of fact:

"3. The claimant has three years of coal mine employment in the Nation's coal mines, and nineteen years of self-employment in the coal mines. (Exhibit 2 and testimony of claimant).

4. That the preponderance of the medical and vocational evidence of record establishes the presence of a respirable disease of sufficient severity to preclude the claimant from engaging in mining or other comparable, gainful employment. (Testimony of Dr. Blum, Dr. Mika and Dr. Szuhay).

5. That the claimant has submitted no evidence to establish that his disabling condition arose out of his three years of covered coal mine employment under the Act, as opposed to 19 years of self-employment.

6. The medical evidence of record indicates that the claimant's pulmonary impairment did not arise out of his three years of covered coal mine employment. (Testimony of Dr. Blum and Dr. Mika).

7. The claimant's disabling impairment arose out of his entire 22 years of exposure to the silica hazard as a self-employed miner and a mine employee. (Testimony of Dr. Mika and Dr. Blum)."

The ALJ then rendered his conclusions of law:

"Since the claimant in this matter offered no evidence to indicate that his disabling impairment arose out of his three year employment in the Nation's coal mines, rather than 19 years of self-employment, and there is medical evidence to indicate that his disabling condition arose out of his entire 22 year exposure as a self-employed miner and coal mine employee in the record; he does not meet the tests set forth in 20 CFR 410.410(b) and 20 CFR 410.414(b) and therefore is not entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended."

---

1. Our prior report contains the history of the administrative proceedings prior to the remand, and is incorporated in this report without further explication.

This decision was approved by the Appeals Council on February 7, 1977, and thus became the final decision of the Secretary.

The Secretary has filed a motion for summary judgment and argument was held on May 17, 1977.

The Federal Coal Mine Health and Safety Act, as amended in 1972, 30 U.S.C.A. § 921 et seq., was intended to be liberally construed to make benefits easier to obtain than they had in the past. The present application of the law in this case by the Secretary is not within the spirit of the amendments of 1972. The primary issue in this case is whether or not the decision of the Secretary is supported by substantial evidence. Implicit in this determination is whether or not the plaintiff's pneumoconiosis arose out of his coal mine employment of three (3) years. Plaintiff originally worked as a self-employed miner for nine (9) years and then as an employee for three (3) years, followed by ten (10) years of self-employment up until 1964, for a total of twenty-two (22) years of coal mining activity.

At the hearing before the ALJ, Dr. Blum testified as follows: (Tr. 150–152).

"A. My impression in such a case would be that the final picture of the disease accumulated gradually throughout all that period of time. There is no way of picking out nor is there likely to be any particular moment that which the disease appeared.

Q. All right. It is medically (inaudible) to assume that the silicosis, if established, would be more incapacitating with the longer exposure to the silica?

A. Yes.

Q. From a medical standpoint assume that the claimant has a chronic respiratory pulmonary impairment, not necessarily designated as pneumoconiosis as such, would it be reasonable to assume that it arose out of a isolated period of three years exposure which occured immediately after this first period of nine years and of a subsequent of some ten years of exposure?

A. Not without some specific information about something unusual taking place during that three years.

Q. Well, the question is based on the assumption that the exposures I indicated were fairly constant throughout the same period of time.

A. Yes, I would say on that basis *it would not be possible to say that anything caused the disease at that particular time rather than at any other time.* (Emphasis ours).

Q. *From a medical standpoint is it possible that a man can contract this in a three year period?* (Emphasis ours).

A. *It's possible.* (Emphasis ours).

Q. Directing your attention to the facts in this particular case, again, from the medical standpoint, assuming he had exposure of some nine years at first and then an additional three years and a subsequent ten years, is it more likely that it would have happened within this three year period?

A. I think it is more likely that is has been a gradual accumulation over the entire period of time. You asked whether it's possible that it happened on some specific time and I answered that is was possible. Without some specific information *the assumption would be that it was a gradual accumulation over the entire period.* (Emphasis ours).

Q. And I think you answered my question that the longer period of exposure the greater likelihood that the condition would become more incapacitating. Is that correct?

A. Yes."

At page 155, Dr. Blum further testified:

"Q. *In your opinion the three years that he worked contributes to the entire picture of development of silicosis in his lungs?* (Emphasis ours).

A. *Yes.* (Emphasis ours).

Q. And if I also understand your testimony, it would be impossible for you or for me or for Dr. Mika or any other doctor, without having some specific physical findings, to say that one certain period as opposed to another caused the silicosis from which he's suffering?"

A. Well, more than specific physical findings. More that is requires is specific information about something unusual taking place during that period of time."

Dr. Mika testified at page 178:

"Q. And is there anything in his occupational history other than his *coal mine employment* which could account for this condition? (Emphasis ours).

A. *No, sir."* (Emphasis ours) (Tr. 179).

Based on this testimony the ALJ found that the plaintiff had not submitted any evidence to establish that his disabling condition arose out of his three (3) years of covered coal mine employment under the Act, as opposed to the nineteen (19) years of self-employment. However, the record shows that it was not possible to submit any evidence to establish that any one year or period of years during the twenty-two (22) years *solely* contributed to the existence of the pneumoconiosis. It is a *non sequitur* to find that the plaintiff failed to carry his burden of proof when it is not possible to establish, with reasonable medical certainty, that any one year or years caused the disabling condition. However, the plaintiff has established that his three (3) years of employment cooperated and combined with the other years of activity to cause his disabling condition. In such a situation, we have a series of concurrent causes each interdependent upon the other in causing the plaintiff's disabling condition.

In finding No. 5, the ALJ, in effect, *excised* the plaintiff's three (3) years of coal mine employment from being a cooperating cause of his disability, and in Finding No. 7 the ALJ restored the three (3) years by stating that the claimant's disabling impairment arose out of his *entire twenty-two (22) years* of exposure to the silica hazard.

By this latter finding, the ALJ has combined the plaintiff's three (3) years as a part of the entire chain of circumstances which caused the plaintiff's disability. There is absolutely no evidence in this record which positively excluded the three (3) years as being an integral factor in causing the plaintiff's disability.[2] In summary, we have a situation where the three (3) years of coal mine employment stand on an equal footing with the other continuous periods of exposure, and each period is an efficient cause of the plaintiff's disability.[3] Therefore, where several causes stand on the same level as being substantial factors in causing the plaintiff's disability, each will be considered a concurrent proximate cause of the plaintiff's condition.

Accordingly, we find that the plaintiff is entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended.

## RECOMMENDATION

Now, this 23rd day of May, 1977, IT IS RESPECTFULLY RECOMMENDED that the defendant's motion for summary judgment should be DENIED, and summary judgment should be GRANTED in favor of the plaintiff. The matter should be remanded to the Secretary for determination as to the amount of the award which the plaintiff is entitled.

2. In fact, Dr. Mika's testimony at pages 178, 179, supra, indicates that plaintiff's *coal mine employment* was the cause of his condition.

3. At argument, defendant referred to *Hamilton v. Weinberger,* 410 F.Supp. 422 (W.D.Va.1975) which is inapposite because the claimant worked four (4) years in a rock quarry in addition to his six (6) years of coal mine employment. Also, defendant referred to *Braden v. Mathews,* 407 F.Supp. 1032 (E.D.Tenn.1976) which is inapposite because the plaintiff worked as a truck driver for many years unlike the plaintiff in the instant case who had a work history of continuous exposure to coal dust.